OPINION
{¶ 1} Appellant Jennifer Christner appeals the decision of the Coshocton County Court of Common Pleas, Juvenile Division, that granted Coshocton County Job Family Services' ("JFS") motion for permanent custody. The following facts give rise to this appeal.
 {¶ 2} Appellant Jennifer Christner is the biological mother of four children: Harley, Robert, John and Tristan. Robert Laux is the biological father of Robert. John Willis is the biological father of John. Andrew Westbrook is the biological father of Tristan. Appellant's parents adopted Harley due to their concerns for his safety while in appellant's custody. JFS became involved with the family in March 1999 when Robert, then age five, was found wandering, by himself, on Route 93 about one-half mile from his home. As a result of this incident, appellant was charged with child endangering and subsequently found guilty.
 {¶ 3} On June 25, 1999, JFS filed a complaint alleging dependency and neglect. Thereafter, on September 23, 1999, appellant entered an admission to the charge of dependency and the trial court dismissed the neglect charge. The trial court issued further orders and approved a case plan. After JFS became involved with appellant and her children, it was discovered that the children suffered from behavior problems and developmental delays. JFS referred appellant to counseling and parenting classes. JFS also provided appellant with in-home parent training and a person to help her address budgeting and the cleanliness of the home. Appellant's goals in counseling were to stabilize her depressive symptoms, improve her relationship and develop appropriate ways to manage her life.
 {¶ 4} On May 12, 2000, the trial court conducted an emergency custody hearing to remove the children from appellant's home based upon allegations that the house was chaotic, domestic violence issues and bruising on one of the children. Following this hearing, the trial court granted temporary custody to JFS. On September 11, 2000, the trial court granted an extension of temporary custody to JFS.
 {¶ 5} On May 29, 2001, JFS filed a motion for permanent custody. The trial court continued the hearing date several times. After the time limit for the permanent custody hearing expired, JFS re-filed its motion for permanent custody on February 1, 2002. The trial court conducted an adjudicatory hearing on April 17, 2002. The trial court issued a judgment entry on June 7, 2002, granting JFS's motion for permanent custody.
 {¶ 6} Appellant timely filed a notice of appeal and sets forth the following assignment of error for our consideration:
 {¶ 7} "I. The judgment decision was against the manifest weight of the evidence presented."
 I {¶ 8} Appellant maintains, in her sole assignment of error, the trial court's decision granting permanent custody to JFS was against the manifest weight of the evidence. We disagree.
 {¶ 9} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 10} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 11} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 12} "(b) The child is abandoned.
 {¶ 13} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 14} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 15} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 16} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 21} In the case sub judice, the trial court stated that it considered the factors concerning best interest. See Judgment Entry, June 7, 2002, at conclusions of law paragraph five. Under R.C. 2151.414(B)(1), the trial court found the children were abandoned under subsection (b). The trial court also found, under subsection (d), that the children have been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. Id. at paragraphs one, two and three.
 {¶ 22} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. It is based upon this standard that we review appellant's assignment of error.
 {¶ 23} Appellant contends the trial court's decision is against the manifest weight of the evidence. First, appellant maintains, according to a psychological report, that she suffers from bi-polar disorder with narcissistic personality disorder and that JFS made no attempt to modify the case plan to include treatment for this disorder. Appellant also argues the case workers that assisted her with her case plan made no attempt to understand this disorder and therefore, could not properly assist her in successfully completing the case plan.
 {¶ 24} The record indicates that for approximately three years, JFS worked with appellant in order to reunite her with her children. Even though numerous services were provided to appellant, appellant failed to utilize these services to her benefit. Specifically, the record establishes that appellant attended only fifty percent of her parenting classes and her counseling sessions. Six months prior to the permanent custody hearing, appellant stopped attending her counseling sessions. Appellant was unable to maintain employment either through the regular work force or through assignments from JFS that were required in order to receive public benefits.
 {¶ 25} Lisa Fadorsen, appellant's counselor, testified that although appellant was initially diagnosed as bi-polar, she believed appellant suffered from borderline personality disorder which presents itself with instability of moods and emotions, difficulty with people who are not on your side and paranoid ideations. Ms. Fadorsen also did not believe appellant suffered from bi-polar disorder because the various medications appellant tried did not seem to have a beneficial effect on her.
 {¶ 26} Also, Dr. Jackson, a psychologist who saw appellant, reported that appellant has more of a narcissistic personality disorder than a bi-polar disorder. Dr. Jackson stated that appellant is egocentric; she has her own perspective and has an inability to see any other perspective; she has an exaggerated sense of self-importance; she views herself in perfectionistic terms; she does not understand the value of parent modeling; she has an ongoing high distress level so that additional stressors are difficult for her because her resources are nearly completely utilized on an ongoing basis; she is reactive to stress and views herself as a victim; her stress is sometimes manifested by physical ailments; she is critical and overcorrecting in her parenting style, which is confusing to the children; she also expresses anger and feelings indirectly; she does not accept responsibility for problems but assigns blame; and because she fails to acknowledge difficulties, she has little motivation to change.
 {¶ 27} Based upon the above evidence, we conclude it was not JFS's failure to provide services to appellant and to work with her on her case plan that resulted in the grant of permanent custody to JFS. Rather, it was appellant's own personality disorders that resulted in her failure to successfully complete the case plan.
 {¶ 28} Appellant also contends JFS never intended to return her children to her. Appellant refers to the testimony of her father, Reverend Donald Silverthorn, who testified that he attended several meetings between JFS and appellant and heard, on several occasions, that JFS had no intention of returning the children to appellant. Appellant also claims that on March 13, 2001, Sue Bell, from JFS, informed appellant that she would never be a good mother and that JFS intended to pursue permanent custody of her children. This statement was allegedly made two months before JFS filed the motion for permanent custody. Thus, appellant concludes JFS pre-determined the outcome of this case.
 {¶ 29} Even if these statements were made to appellant, the record indicates JFS took numerous steps to assist appellant with reunification. JFS provided services to appellant which appellant failed to pursue. Therefore, even if employees of JFS made these comments, ultimately, it was appellant's failure to successfully complete the case plan that resulted in the trial court granting permanent custody of appellant's children to JFS.
 {¶ 30} Appellant next maintains that although she did not entirely complete the case plan, JFS should have amended the case plan in order to allow her to continue working on it. Appellant also argues the case plan should have been amended to compensate her for her disabilities. We disagree with appellant's argument and instead find that appellant had approximately three years to work on her case plan which she failed to do.
 {¶ 31} Appellant also maintains JFS failed to properly contact the fathers in this case and therefore, it was inappropriate for the trial court to determine the fathers had abandoned their children. As it is not appellant's rights that were violated by the alleged failure to provide notice to the children's biological fathers, we conclude appellant lacks standing to make this argument.
 {¶ 32} Finally, appellant contends the trial court failed to consider the factors contained in R.C. 2151.414(E). The only time a trial court is required to consider the factors contained in section (E) is when it grants permanent custody pursuant to R.C. 2151.414(B)(1)(a). The trial court did not grant permanent custody, to JFS, under this section of the code. Therefore, there was no need to consider the factors contained in section (E). However, we would note the trial court did make a finding under R.C. 2151.414(E)(1), which it was not required to do. See Judgment Entry, June 7, 2002, at conclusions of law paragraph four.
 {¶ 33} Accordingly, we conclude the trial court's grant of permanent custody to JFS was not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.
 {¶ 34} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Coshocton County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J. and Farmer, J., concur.
Topic: Permanent Custody.